AO 108 (Rev. 06/09)  Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT

for the

Southern District of Texas

United States Courts
Southern District of Texas
FILED

April 11, 2023

Nathan Ochsner, Clerk of Court

| In the Matter of the Seizure of | ) | |
| *(Briefly describe the property to be seized)* | ) | |
| All funds on deposit in account number 8733-3247 held in the name of Ping An Financial Services PTE LLC ("account x3247") | ) | Case No. **4:23-mj-701** |
| | ) | |
| | ) | |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the ___Southern___ District of ___Texas___ is subject to forfeiture to the United States of America under ___18___ U.S.C. § 981(a)(1)(A,C) *(describe the property)*:

All funds on deposit in account number 8733-3247 held in the name of Ping An Financial Services PTE LLC ("account x3247")

The application is based on these facts:

See attached affidavit setting out the factual basis for probable cause to believe that the money sought to be seized is subject to forfeiture as property which constitutes or is derived from proceeds traceable to wire fraud, as property involved in money laundering.

☑ Continued on the attached sheet.

_Jeremy L. Borowick_
*Applicant's signature*

Jeremy L. Borowick, Special Agent - FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: ___April 11, 2023___

_Yvonne Y. Ho_
*Judge's signature*

Yvonne Y. Ho, U.S. Magistrate Judge
*Printed name and title*

City and state: ___Houston, Texas___

**4:23-mj-701**

<u>**AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT**</u>

I, Jeremy L. Borowick, Special Agent for the Federal Bureau of Investigation, having been duly sworn, depose and state as follows:

<u>**INTRODUCTION AND BACKGROUND**</u>

1.      I am submitting this affidavit in support of a seizure warrant for wire fraud proceeds contained in a financial account held by Wells Fargo Clearing Services, LLC d/b/a Wells Fargo Advisors ("Wells Fargo"). I submit that Christopher Knight Lopez ("C. Lopez"), who resides in Houston, Texas, and Jayson Lopez ("J. Lopez"), who resides in Orlando, Florida, used Wells Fargo account x1640, controlled by J. Lopez, to receive fraud proceeds, and that some of those proceeds were subsequently transferred into Wells Fargo account x3247 (the current Target Account), also controlled by J. Lopez. In addition, J. Lopez opened a line of credit in Wells Fargo account x7513, using the fraudulent proceeds in account x1640 as collateral.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI). I have been employed with the FBI in this capacity since August 21, 2016. As a Special Agent with the FBI, I have investigated various financial crimes including wire fraud, bank fraud, and money laundering, along with other federal criminal violations. I am currently assigned to the Complex Financial Crimes squad in the Houston Division.

3.      The statements in this affidavit are based on my personal observations, training and experience, and on information obtained from witnesses, other law enforcement officials, and a review of records obtained during the course of investigation. Because this affidavit is being submitted for the limited purpose of securing a seizure warrant, I have not included each and every fact known to me concerning this investigation.

**PROPERTY TO BE SEIZED**

4.      This affidavit is submitted in support of seizure warrants for the following funds

held at Wells Fargo:

a.      All funds on deposit in account number 8733-3247 held in the name of

Ping An Financial Services PTE LLC ("account x3247").

5.      As shown through the facts set forth below, there is probable cause to believe that

C. Lopez and J. Lopez used false and fraudulent U.S. Treasury Bonds to defraud investors. The

fraudulent proceeds were deposited in account x1640. Some of the fraudulent proceeds were then

transferred from account x1640 to account x3247. Furthermore, J. Lopez opened a line of credit

in Wells Fargo account x7513, using the fraudulent proceeds in account x1640 as collateral.

6.      Prior to this submission, on about January 3, 2022, the United States previously

sought and obtained seizure warrants for the three accounts (described below) established in

Wells Fargo Clearing Services, LLC d/b/a Wells Fargo Advisors ("Wells Fargo"). Those seizure

warrants were authorized by Magistrate Judge Sam S. Sheldon.

7.      However, following the execution of the prior seizure warrants in this matter, Wells Fargo Advisors notified the United States that Wells Fargo held a secured creditor interest in the seized accounts. After further investigation, the United States confirmed that the secured creditor interest would be entitled to priority (either as an innocent owner, or as a bona fide purchaser for value without knowledge of the forfeitability of the funds) in the event of a successful forfeiture of the seized funds. Additionally, the United States determined that interest was continuing to accrue on the debt secured by the seized funds, which would substantially reduce (or possibly fully deplete) the amount of funds available for forfeiture. Therefore, the United States elected to not pursue the prior-authorized seizure of funds and withdrew and released the seizure warrants. Following the withdrawal and release of the warrants, Wells Fargo Advisors effectuated their contractual setoff right against the funds, leaving an unencumbered remaining balance of approximately $900,000, which remains frozen by Wells Fargo Advisors. The United States now seeks to seize the remaining balance of forfeitable funds.

## STATUTORY BASIS

8.      18 U.S.C. § 981(a)(1)(C) provides for the forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense." Title 18 U.S.C. § 1343 (wire fraud) is a "specified unlawful activity" pursuant to 18 U.S.C. §1956(c)(7).

3

9.      18 U.S.C. § 981(a)(1)(A) provides for the forfeiture of "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property." It is a violation of 18 U.S.C. § 1957 to knowingly engage or attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity. Title 18 U.S.C. § 1343 (wire fraud) is a "specified unlawful activity" pursuant to 18 U.S.C. §1956(c)(7).

10.     Your affiant submits that there is probable cause to believe that funds on deposit in accounts x1640, x3247, and x7513, are the proceeds of wire fraud, a violation of 18 U.S.C § 1343, and/or are subject to forfeiture through application of 18 U.S.C. § 981(a)(1)(C). Additionally, there is probable cause to believe that the funds on deposit in accounts x1640, x3247, and x7513, are property involved in money laundering, and are also subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A). Funds subject to forfeiture are subject to seizure pursuant to 18 U.S.C. § 981.

## PROBABLE CAUSE FOR SEIZURE

11.     The United States, including the FBI, is conducting a criminal investigation of Christopher Knight Lopez ("C. Lopez"), Jayson Lopez ("J. Lopez"), and others regarding a fraudulent scheme in which C. Lopez, J. Lopez and others commit fraud using fake U.S. Treasury bonds.

12.     In 2013, Amable Delos Reyes Aguiluz ("Aguiluz") acquired what was purported to be two $1 billion United States Treasury bonds, bearing serial numbers F49494957B and F49495012B. At the request of the FBI, the U.S. Department of the Treasury has examined copies of the bonds and confirmed that the bonds are not authentic and appear to be forged.

4

13. In 2019, C. Lopez, J. Lopez, and Aguiluz reached a deal wherein Aguiluz agreed to transfer the fake bonds to a company associated with J. Lopez called Ping An Financial Services PTE LTD ("Ping An (Singapore)"). As part of the agreement, C. Lopez, and J. Lopez would use the fake bonds to raise money. After obtaining possession of the fake bonds, C. Lopez and J. Lopez used the fake bonds to commit fraud against various individuals and entities.

14. On September 12, 2019, J. Lopez registered Ping An Fund I Limited Partnership ("Ping An Fund") in the state of Wyoming.

15. On January 15, 2020, J. Lopez registered Ping An Financial Services PTE LLC ("Ping An (Florida)") in the state of Florida.

16. James W. France, the CEO of Financial Investors Insurance Company ("FIIC"), was introduced to C. Lopez in 2019. C. Lopez told France his brother, J. Lopez, was a director at Ping An (Singapore).

17. On February 6, 2020, France, misled by C. Lopez and J. Lopez into believing the two fake $1 billion U.S. Treasury bonds were real, executed a Subscription Agreement with J. Lopez. Under the terms of the agreement, France would receive $250 million from the fake U.S. Treasury bonds, and J. Lopez would receive two million shares of a company owned by France called FIIC Acquisition Corporation ("FAC").

18. Furthermore, according to a Ping An Fund financial statement for the period ending December 31, 2020: Ping An Fund acquired a 100% interest in Exempt Securities Fund I LP ("ESF"), owned by C. Lopez, for the purpose of securing ownership of one of the fake $1 billion U.S. Treasury Bonds. Subsequently, Ping An Fund sold limited partnership units, a.k.a. "units" or "subordinate units", to third parties in the following transactions:

a. On November 4, 2020, 2.0 subordinate units were sold for $235,000.

      b.      On December 14, 2020, 8.0 subordinate units were sold for $932,500.

      c.      On December 21, 2020, 100.0 units were sold for $10 million.

19.    In February 2020, C. Lopez prepared a Management Representation letter incident to the audit of ESF which stated, "Per the US Treasury all that is required to redeem bonds is to contact treasury in written form, provide a fully attached IRS W-9 (for tax withholdings) and contact US Treasury at 844-284-2676. The full face value (minus taxes and withholdings) is eligible to be claimed in any given year which authorizes the asset to report as a current asset." In addition, C. Lopez prepared an Asset Valuation Report to, "…estimate the fair market value of the assets known as Denominated $1 Billion Face Value U.S. Federal Reserve Bond(s) Series 1934 Serial Number(s) – F4949457B, F49495012B." C. Lopez listed the information sources used to prepare the valuation including, *Fair Value Analysis Conclusion on Collateral Value of a $1 Billion Face U.S. Gold Certificte Federal Reserve Bearer Bond, September 1, 2013. BizValue Ltd.* According to the BizValue Ltd analysis, "…we conducted a phone interview with Dr. Colburn, in which he confirmed based on their expertise that they are confident the boxes and bonds are genuine and not forgeries. He also stated the Treasury confirmed the serial numbers of the bonds as legitimate." I know from my investigation that these representations were fraudulent, as representatives Treasury reviewed the fake bonds at issue and determined that they were not legitimate bonds.

20.    In addition, the subscription agreement for the December 21, 2020 sale of 100.0 "units" for $10 million was between HARPCO PTE LTD ("HARPCO") and Ping An Fund. J. Lopez signed the agreement on behalf of Ping An Fund. According to the agreement, J. Lopez represented to HARPCO that Ping An Fund had gross assets of over $1.6 billion and a net asset value of over $900 million.

21.     In my training and experience, by purchasing the limited partnership units, the third party investors were purchasing an ownership interest in a false and fraudulent U.S. Treasury bond based on false and fraudulent representations that the bonds represented an actual asset. Additionally, as stated above, C. Lopez included false and fraudulent representations about verification and review efforts to determine the bonds were legitimate.

22.     Based on my review of the account records for the prior target accounts (and the remaining current target account), the fraudulent proceeds were transferred into the accounts through the following transactions, each of which constitutes a violation of 18 U.S.C. § 1957 as the funds transferred constituted proceeds of wire fraud, and totaled greater than $10,000:

a.      On November 19, 2020, BBVA account xxxx4019, in the name of Ping An Financial Services PTE LTD ("Ping An (Singapore)"), received a wire transfer from MACTX International PTY LTD ("MACTX") in the amount of $234,994. MACTX is managed by the same individuals that manage HARPCO.

b.      On December 17, 2020, BBVA account xxxx4019, received a wire transfer from MACTX in the amount of $972,294.

c.      On December 18, 2020, J. Lopez transferred $950,000 from BBVA account xxxx4019 to Wells Fargo account x1640.

d.      On December 24, 2020, Wells Fargo account x1640, in the name of Ping An Financial Services PTE LLC ("Ping An (Florida)"), received a wire transfer from MACTX in the amount of $9,999,994.

e.      On May 7, 2021, Wells Fargo account x1640 received a wire transfer for $100,000 from HARPCO.

7

f.      On May 20, 2021, Wells Fargo account x1640 received a wire transfer for $342,272 from HARPCO.

g.      On June 3, 2021, Wells Fargo account x1640 received a wire transfer for $100,000 from HARPCO.

h.      On January 19, 2021, Wells Fargo account x1640 transferred $950,000 to Wells Fargo account x3247, in the name of Ping An Financial Services PTE LLC ("Ping An (Florida)").

23.     On January 12, 2021, Wells Fargo account x7513, account name "Ping An Financial LLC Jayson Lopez Priority Credit Line", was opened by J. Lopez as a line of credit using the fraudulent proceeds in account x1640 as collateral. On January 19, 2021, J. Lopez withdrew $8,500,000 from Wells Fargo credit line account x7513 and transferred it to Wells Fargo account number xxxx1313, account name "The Law Firm of Donal R Schmidt Jr PLLC". The investigation has determined that this transaction was part of series of transactions by which J. Lopez moved fraud proceeds through Wells Fargo account number xxxx1313 in furtherance of the scheme to defraud and for the personal use and benefit of J. Lopez, C. Lopez, and others.

24.     On January 12, 2021, J. Lopez used approximately 9.95 million in funds from Wells Fargo account x1640 to purchase approximately 10.55 million shares of various fixed income securities that are held within account x1640.

25.     On June 3, 2021, a federal Grand Jury in the Southern District of Texas returned an Indictment against C. Lopez, J. Lopez, and others, Case Number 4:21-CR-301. The Indictment charges C. Lopez and J. Lopez with violations of conspiracy, wire fraud, and other offenses arising out of a Ponzi-style fraud scheme. The Indictment does not include any charges involving the fake U.S. Treasury bonds.

26.     On June 25, 2021, Frank M. Smith ("Smith"), an attorney licensed to practice in the State of Florida, filed an amendment with the Florida Secretary of State removing J. Lopez as an authorized manager, and adding himself as an authorized manager, of Ping An (Florida).

27.     On December 7, 2021, J. Lopez filed an amendment with the Florida Secretary of State removing Smith as an authorized manager, and adding himself as an authorized manager, of Ping An (Florida).

28.     On December 15, 2021, a Temporary Restraining Order was filed in the District Court of Collin County, Texas (Cause No. 471-06872-2021) by Donal R Schmidt, an attorney licensed to practice in the State of Texas. The Plaintiff in the matter is Ping An Fund, and the Defendants are: "Wells Fargo Clearing Services, LLC A/K/A Wells Fargo Financial Advisors, Frank Smith, individually and as agent for Ping An Financial Services, PTE, LLC and Ping An Financial Services PTE, LLC". The Order restrained the Defendants regarding Wells Fargo accounts x1640, x3247, and x7513 pending a temporary injunction hearing set for January 5, 2022.

29.     On or about January 3, 2022, the United States sought and obtained seizure warrants for three accounts established in Wells Fargo Clearing Services, LLC d/b/a Wells Fargo Advisors ("Wells Fargo"). Those seizure warrants were authorized by Magistrate Judge Sam S. Sheldon. (The affidavit in support of the application for the prior warrants contained substantially the same information included in this affidavit.) As described above, the United States released those seizure warrants, and now seeks to seize the remaining unencumbered funds for forfeiture.

9

30.     The investigation has determined that all funds on deposit in the remaining current target account are proceeds of wire fraud—the investigation was unable to identify any legitimate funds present in any of the prior target accounts or the current remaining target account. Furthermore, even if accounts did contain "clean" funds, the entire accounts would still be subject to forfeiture as property "involved in" money laundering pursuant to 18 U.S.C. § 981(a)(1)(A).

## CONCLUSION

31.     Based upon the facts and circumstances outlined with this affidavit, your affiant submits there is probable cause to believe the three accounts held at Wells Fargo currently hold fraud proceeds and property involved in money laundering as described above.

Your affiant submits that there is probable cause to believe that all funds on deposit in account x3247 are subject to seizure and forfeiture to the United States of America as the proceeds of specified unlawful activity.

Jeremy L. Borowick
Special Agent
Federal Bureau of Investigation


Subscribed and sworn to by telephone on April 11, 2023 and I find probable cause.

Honorable Yvonne Y. Ho
United States Magistrate Judge

10